State Farm Fire and Casualty Insurance Company, as Subrogee of Joyce Kassouf, Respondent,
against
Watts Water Technologies, Inc., Appellant.




Melick & Porter, LLP (John F. Rooney, III, Esq.), for appellant.
Nicolini, Paradise, Ferretti & Sabella, PLLC (Daniel W. Berglund, Esq.), for respondent.

Appeal from an order of the Civil Court of the City of New York, Queens County (Terrence C. O'Connor, J.), entered July 8, 2016. The order denied defendant's motion to dismiss the complaint or, in the alternative, to compel arbitration and stay the action pending arbitration.




ORDERED that the order is affirmed, without costs.
On August 12, 2015, plaintiff commenced this action to recover damages as subrogee of its insured, Joyce Kassouf, the owner of the insured premises. Plaintiff claimed that, on October 17, 2012, a malfunction in a stainless steel toilet connector in the water supply line caused a water leak, resulting in damage to the insured premises. Plaintiff alleged that the damage was due to the carelessness and negligence of defendant "in the servicing, design, testing, inspection, manufacture, promotion, distribution, assembly, installation, use and/or sale of the toilet connector," and that plaintiff incurred a loss of $19,266.98 when it reimbursed Kassouf for the property damage sustained.
Defendant moved to dismiss the complaint or, in the alternative, to compel arbitration and stay the action pending arbitration, on the ground that the parties had entered into a written "Property Subrogation Arbitration Agreement" which required product liability claims such as this one to be submitted to arbitration through Arbitration Forums, Inc. (AFI). By order entered [*2]July 8, 2016, the Civil Court denied defendant's motion.
At the time of the alleged loss, both plaintiff and defendant were signatories to the aforementioned agreement administered by AFI, requiring them to "forego [sic] litigation and submit any personal, commercial or self-insured property subrogation claims to" AFI. The agreement also authorized AFI to "make appropriate Rules and Regulations for the presentation and determination of controversies" under the agreement. According to AFI's rules, effective October 1, 2012, compulsory arbitration was applicable to property subrogation claims seeking recovery up to a maximum of $100,000.
In November 2014, in an e-bulletin, AFI notified the parties that, effective January 1, 2015, the agreement would be amended to exclude from compulsory arbitration any "product liability claim arising from an alleged defective product," unless written consent had been obtained. The e-bulletin explained: "While the use of the Property Program to resolve disputes involving product liability claims arising from an alleged defective product will no longer be compulsory as of January 1, 2015, cases filed prior to January 1, 2015 will remain in arbitration's jurisdiction and will be processed to hearing. Parties may still consent to use the Property Program to resolve product liability claims on a per-case basis on and after January 1, 2015." The agreement was then formally amended, effective January 1, 2015, by adding the following language to the section governing exclusions: "No company shall be required, without its written consent, to arbitrate any claim or suit if: (i) it is a product liability claim arising from an alleged defective product." Therefore, this action, which was commenced on August 12, 2015, is excluded from compulsory arbitration. Although defendant contends that it is the date of loss that determines whether compulsory arbitration applies to a claim, there is nothing in the AFI agreement or rules to support such an interpretation. 
We note that the section of the "Reference Guide to [AFI's] Agreements and Rules" (effective January 1, 2015) dealing with exclusions states: "Article Second lists the exclusions to compulsory arbitration. . . . If any of these exclusions apply to the dispute or suit in question, the members are not required to file arbitration." 
We further note that neither the 2015 Reference Guide nor the 2012 Reference Guide (which was in effect at the time of the loss herein) states that the date of loss determines whether a claim is subject to compulsory arbitration. In fact, the 2015 Reference Guide clearly states that "[t]he date of loss is not controlling."
Accordingly, for all the foregoing reasons, the order of the Civil Court denying defendant's motion is affirmed.
SOLOMON, J.P., and ELLIOT, J., concur.
PESCE, J., taking no part.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: December 01, 2017